We'll move on to the next case of the day, United States v. Cole, which is No. 20-2105 and we'll hear first from Mr. Hillis. May it please the Court, Mr. Simpson, my name is Daniel Hillis. I'm with the Federal Public Defender's Office and I represent Mr. Cole. The evidence in this case should have been suppressed because the officer who initiated the traffic stop lacked reasonable suspicion to stop Mr. Cole's vehicle. The trooper stopped Mr. Cole for following too closely, but Illinois has no statute that says following too closely is unlawful. Mr. Cole's opening brief cited authority from Illinois courts saying that following too closely can't be established by an officer's claim that a car was within a particular number of lengths from a forward vehicle. And we cited the Phillips and the Reed cases, which are both applicable Illinois authority. The government hasn't responded to those arguments with respect to those cases. Mr. Hillis, can I just clarify please something about your argument? Are you disputing the judge's factual finding that he was driving too closely behind the car or are you challenging the reasonable suspicion on the ground that the court didn't analyze all of the factors in the violation?  Okay, so you don't dispute the court's factual finding that your client was driving too closely behind the car when they merged. Given the standard of review, Your Honor, in particular, I don't think that would be fruitful. Okay, thank you. So my client, of course, would also rely on federal authority from the Central District of Illinois, the Del Rio case that said the government's failure to establish proof that road conditions justified a traffic stop is something that has to be considered in the Del Rio case that led to suppression. And as I mentioned, that's a Central District of Illinois case. So the government doesn't address these cases. Instead, it cites other cases that say an officer's belief that a car was too close can justify reasonable suspicion. But those cases misapprehend the Illinois authority that we cited in our brief. So unless the court has questions on that subject, I would like to move on to the second contention in our brief. And that second contention is that the evidence should be suppressed as an alternate basis because the trooper unlawfully questioned Mr. Cole for lying in the traffic stop and that the officer lacked reasonable suspicion for the canine search. So the mission of this traffic stop is the relevant thing to start with. And here, the following too closely required the officer to stop and make inquiries regarding that. But the officer didn't limit his inquiries to that at all. And under Rodriguez, which is the fairly recent Supreme Court case on the subject, it discusses what an officer may do when questioning an individual for a traffic stop. And importantly, Rodriguez at page 1615 said that an officer is limited to checking the driver's license of the individual, the outstanding warrants, car's registration, and proof of insurance. Those things are necessary. Questioning a person about their reasons for travel and examining the person through a roadside interrogation about other matters is now extending the inquiry beyond what is the mission at hand and moving far afield into matters that are unrelated to the traffic stop. Those things necessarily prolong the stop. And insofar as the government's reliance on Lewis, Lewis said the critical difference in the case where Lewis said evidence shouldn't be suppressed was that the officer's inquiry did not prolong the traffic stop. Here, we have an additional 40-some minutes where the officer, after establishing all that he needed to address the following too closely violation, that's at about 5 minutes and 24 seconds in the video. The search, excuse me, the interrogation goes on for another 40-some minutes. And then the search is a long period of time, of course, after the initial stop where the officer has all the necessary information at 5 minutes and 24 seconds. Mr. Hillis, you aren't disputing that the officer could ask about travel plans as long as it didn't extend or prolong the traffic stop, are you? That seemed to be resolved in Arizona versus Johnson. Your Honor, I think that it is a problem when you have a show of authority and there's an interrogation of this sort whose purpose is to unearth evidence of additional criminality. I think it's a separate issue from Rodriguez, but I do have a problem when officers are using the event of an unlawful traffic stop to now proceed into questioning of this type. So I do have a problem with how it's being done here as a matter of the roadside interrogations by these officers in Illinois. Didn't the Supreme Court in Arizona versus Johnson say that you could ask travel questions and questions about travel plans as long as it didn't extend the stop? Are you saying that Rodriguez has abrogated that? I think it's a problem when they're doing this because they are, of course, prompting responses and they're not supposed to be doing that. They're not supposed to be using their position of authority to prompt responses to questions that are now going to result in things that are. So is Arizona v. Johnson no longer good law in your mind? Your Honor, I'm just drawing the distinction and I would say that we recognize the opposing authority on this. We just think that this is an abusive process that is leading to bad results here. I would have thought, Mr. Hillis, at least as I look at this case, I focus on the questioning that went on on the video before they moved from the roadside to the gas station. Where at least by my count, about five of the first seven or eight minutes of the stop are devoted to the trooper questioning Mr. Cole about his travel plans and his itinerary. At least one way to reconcile Johnson and Rodriguez is based on time. That this was not that this did prolong the stop while he's questioning him on these collateral matters. That is a cleaner break between the two cases, Your Honor, by far. That analysis would resolve any conflict between these if there is any. And so that is a significant problem in our view. And as Your Honor mentioned, that is questioning that goes to something or excuse me, maybe intimating. That is questioning that goes to something beyond the mission of the traffic stop. I mean, I'll just say if we get into the later questioning that happens at the gas station and the stories about the and I'm talking about about 25 minutes plus into the interrogation. Mr. Cole's story does seem highly suspicious seems to be falling apart. But I thought, but the real problem is whether it was appropriate to hold it even that long. That is a real problem. Is it. Am I correct that the troopers started checking for the availability of canine units as he's starting to drive to the gas station was that was there anything before then. Okay. But, of course, the unavailability of the canine unit doesn't mean that my client can be detained until they can locate a dog. This all factors back into Rodriguez about the reasonable duration of the traffic stop. In your view, when at any point did the trooper get reasonable suspicion of drug activity such that a search was justified. I dispute that he ever had a judge. I think that he had suspicions, but I don't think that they're reasonable suspicions. I think in particular, when you're looking at the government's brief, and they're focused on a potpourri of things like rappers and the price that were paid for the Volkswagen and all these things that aren't even relevant to the district court's ultimate determination. We see a laundry list, both from the government and from the district court about things that are what we would call innocent explanations or minor inconsistencies under Socolow, the Supreme Court case that says those things shouldn't justify detention. And so that is a combination of all of those factors. Well, while one of those factors might be not be sufficient to raise reasonable suspicion when you have all of them together. It's a different analysis. That's correct. And so as far as the analysis goes, though, Judge, we're supposed to be looking at the totality of the circumstances. And we've got things that impact the officer's credibility and the make weight nature of these things where they're trying to galvanize facts subsequent to this search. And so the pulsating abdomen is a very curious example. The officer's assertion of training and experience without any proof of training experience that this court has criticized in the Davis case. That was a search warrant case, but it's the same sort of consideration here. There was not a totality of the circumstance analysis. There was an examination only of the facts that were favorable to the government. And we find that to be a problem here analytically. With that, I reserve the balance of my time for rebuttal. All right. Thank you, Mr. Hillis. Mr. Simpson. Good morning, Your Honors. May it please the court. I'm Scott Simpson on behalf of the United States. This case presents a growing chain of reasonable suspicion, starting even before Trooper Chapman stopped the defendant. And as always, with reasonable suspicion, we need to look at the totality of the circumstances, not just that each back in isolation. I really don't think we need to spend much time on the initial stop. A traffic stop is justified if an officer has an objective basis for reasonable belief that the driver has committed a violation. The defense would agree, Mr. Simpson, based on the on the video. The vast majority of vehicles in this stretch of traffic could have been stopped on similar grounds, either following too closely or failing to yield in the merge. I suppose so, Your Honor. But I don't think that undercuts the fact that the troop, the trooper had reasonable, reasonable suspicion. And in fact, in listening to after listening to the testimony of the officer and Mr. Cole, the district court found that that trooper Chapman's testimony along those lines was more credible. The defense argues that the government has to prove that the defendant committed the violation of following too closely. But this court has squarely rejected that very argument in its 2019 decision in Lewis. As the court said there, whether the driver actually committed a traffic and traffic infraction is irrelevant for Fourth Amendment purposes. Could I ask you? We don't have a whole lot of time. So maybe I missed it in your brief, but I'd like you to focus on the the questioning about Mr. Cole's itinerary and travel plans that took place at the roadside before the move to the gas station, which looks a lot like a lot like a Rodriguez violation. Certainly, Your Honor. Perhaps the most common question from a police officer after license and registration is where are you headed? And this court said in Lewis that it said officers across the country would be surprised if we countenance the characterization of this basic routine question as irrelevant to a traffic stop. And that decision came after the Supreme Court's decision in Rodriguez. Yes, Rodriguez stands for the proposition that that kind of questioning not relevant to the traffic infraction can't cannot unreasonably extend the stop. But here it didn't. As as you're listening to on the video, as you're listening to Trooper Chapman's very calm. I think I think it's a stretch to call this an interrogation. We can hear Trooper Chapman's tone in the video very calmly asking conversationally asking Mr. Cole about his travel. Mr. Cole is not free to go. At that point, correct, Your Honor, because he had been stopped for a traffic violation. Right. But it's not idle chitchat here. So my concern is not the fact that the question is asked. My concern is that this turns into a prolonged, nicely, nice and polite and friendly interrogation that prolongs the stop. But Your Honor, that the conversation in the police cruiser went on for eight minutes. I think certainly that would be a reasonable length of time for a traffic stop. Sure. It depends upon how the trooper is using his time under Rodriguez. Right. Correct. That is. So it's not as though you get, you know, five free minutes of interrogation. That's not the Rodriguez standard. And what I don't see here is evidence that the question that he was making independent progress on the on the warning while he was doing all this question by the roadside. Actually, Your Honor, I think he was. As you listen to the video while Trooper Chapman is asking those questions about about Mr. Cole's travel, you can also hear him hear the beeps of the computer looking up, you know, checking Mr. Cole's driver's license, checking the registration, working on the warning. Already done all those. He'd done those checks before he even stopped. Right. Your Honor, he had not checked the arrest, the criminal history. He did not learn about the free arrest in three different states until after the stop. But did he learn about that at the gas station or when they were still on the side of the road? He learned, Your Honor. He learned about the three arrests in different states while they were at the side of the road. He did not learn the nature of the arrest until they had gotten to the gas station. I ask you if we can go back a little bit in time, Mr. Simpson, to the suspicion that Mr. Cole was driving suspiciously slowly, which was identified by Deputy Suttles and then later by Trooper Chapman. We said in a case called Ingrao 897 F. Second 860 back in 1990 that the mere lawful operation of a motor vehicle should not be considered suspicious activity. Absent extraordinary circumstances or extraordinary contemporaneous events. Do you want to argue that his driving below the speed limit was suspicious here? No, actually, Your Honor, I had not intended to talk about that. And I don't I get the truth. The officers did rely on it. Right. Correct, Your Honor. But but what matters here is not what the officers were thinking. But we need to look objectively at all the facts here in determining whether there was reasonable suspicion. It's an objective standard. And if I could just summarize some of the facts that we're talking about here. And again, as Trooper Chapman started asking Mr. Cole about his travel plans and asking about the fact that he had a driver's license from one state and registration from another state and so forth. Trooper Chapman's reasonable suspicion mounted incrementally. So let's let's let's imagine we are in Trooper Chapman's position here. You stop a car with a license plate from halfway across the country. The driver has numerous food wrappers suggesting a long trip, but his only luggage is a backpack. He gives you registration and license from two different states. The registration has an address in Los Angeles, which, you know, is a major source city for illegal drugs. Are there any cities that are not major source cities for illegal drugs? I don't know, Your Honor, but I'm sure that I think I think it's very recognized that Los Angeles certainly being near the being a very large city and being near the border with with South America is is a major source for illegal drugs. And so you ask the driver to sit in the in the passenger seat of the police cruiser. And when he sits down, he keeps his right leg outside the car and the door open, even though it's late June in central Illinois. You ask the driver about his registration and license being from two different states. He doesn't really respond directly when you ask that question. He mentions four different states across the country in answering the question. California, Maryland, New York and Arizona. Then a minute later, he mentions another one, Florida. You ask the driver where he started on this trip. And he says Colorado Springs. Each time he answers one of your questions, she's shifting around in the seat. A minute later, you ask about the origin of this trip. And again, the answer is indirect, confusing. He says, let me go ahead and put that even though my time is short. He says the origin. I was in Cincinnati. I stopped in Cincinnati for a couple of days. Work related stopped in Cincinnati coming from Maryland and stopped in Colorado at the springs and met some friends at the springs. Visited a friend in outside of Boulder and came back. And all of that traveling, he tells you, took only about four days or five days. And again, you see at some point on your computer, this person has been arrested three times in three different states. You see that the registration was issued only three days ago. And the driver admits he didn't get the registration himself. A friend got it for him. At what point during this recitation or what point during the traffic stop on the side of the road? Do you think the officer had reasonable suspicion of other criminal activity? Your Honor, I think it's hard to tell at what precise point during the eight minutes. I think certainly by the time by the end of that eight minute period, he had reasonable suspicion. I think that's the that's the most solid thing we can say. So just a few points about the move to the gas station. They waited for about 28 minutes. And if I could just point out in my foot, if I could just go on for that. Thank you, Your Honor. The officer tried to minimize that weight by seeking canine units from three different local law enforcement agencies, starting with the closest police police in Springfield. Before finally getting the canine unit from the state police facility in Pawnee. And during that that wait at the gas station for 28 minutes, the reasonable suspicion to continue to detain him further increased with things like learning about that. He had drug related arrests, money laundering, use of weapon and a drug offense. You see that the insurance on the Volkswagen had been purchased only four days earlier. He gave a current residence address that was different from the address on the on the car's brand new registration. So, again, this is a growing, strengthening chain. So we would urge the court to affirm. So I can't resist asking whether you figured out what artery was supposedly visible in Mr. Cole's stomach. Your Honor. No, I have not. And if I would urge the court to look at to look at the transcript on that. That's that's part of a two page description, a two page answer by by Trooper Chapman about why he had reasonable suspicion. It's at the end of a paragraph near the end of that explanation. This seems to be just an afterthought, maybe even a misstatement. And it was not I should point out also, it was not in Trooper Chapman's written report. Thank you, Mr. Ellis. Rebuttal. The fact that something isn't in the report is strong argument for impeachment that then affects credibility in a cast in a bad light. Everything else the officer asserts. So that is not good here. Also, I'm not certain that reasonable suspicion increased, but I know that the delay increased as they waited at the gas station for this canine to arrive. And officers, if they know that they're going to search this guy and anybody else, they could be making simultaneous arrangements. There are lots of law enforcement officers. They can make a decision to bring in a canine and coordinate that. And the fact they are now having the third effort only increases the delay. It doesn't show that the amount of time is reasonable under Rodriguez. As far as you mentioned. When they were pulled over on the side of the road that the officers checking of criminal history and checking to see if there were any outstanding warrants is covered under part of the mission of the traffic violation. Part of that is your honor. The things that are listed in Rodriguez are part of the mission. The things that are not mentioned in Rodriguez aren't the Supreme Court's pretty careful institution in writing opinions, saying the things that are permissible and the things that aren't when they leave things out. I would say that under the existing authority and Rodriguez, they're not included in courts like Landeros from the 9th Circuit and recognized effectively overruling precedent is the decision in Rodriguez that now limits it cabins with an officer can ask. And so if we have authority from the 7th Circuit, that may be in counterpoise with the likes of Rodriguez and what Rodriguez says can be done. We now need to reconcile those cases with Rodriguez like Landeros and other authorities say has needs to be done. In respect to in Grail, if I just make close with this, we cited Flores, which is a 7th Circuit case that said that a suspicion isn't reasonable if it allows police to stop substantial portions of the driving public. That's the same principle as in Grail. It's more recent case, but I would say then connect the dots and the recent authority and the early authority from the 7th Circuit would suggest that this is not a reasonable stop here. We asked the court to reach that same conclusion and order the evidence be suppressed at the very least. There should be an additional evidentiary hearing, if not, because of the facts that this report included that were incorrect. And we cited those in our brief and the failure to take into account the officer's credibility, etc. As part of what should have been a totality of circumstances analysis. All right, our thanks to both counsel cases taken under advisement. We'll move on to the final case of the day. Maritha Arnold against Andrew Saul appeal number.